**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-22018-CIV-ALTONAGA/O'Sullivan**

**FEDERAL TRADE COMMISSION**,

Plaintiff,

vs.

**HISPANIC GLOBAL WAY, CORP.**, *et al.*,

Defendants.
_______________________________________/

**PRELIMINARY INJUNCTION ORDER**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), filed an *Ex Parte* Motion for a Temporary Restraining Order and other relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, and, on June 2, 2104, the Court granted the FTC's *Ex Parte* Motion for a Temporary Restraining Order including an Order to Show Cause Why a Preliminary Injunction Should Not Issue. Upon consideration of the materials submitted by the parties and argument of counsel, the Court enters this Preliminary Injunction Order.

**I.**

**FINDINGS**

A. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it has jurisdiction over all Defendants.

B. Venue is proper in this District.

C. Defendants' activities are "in or affecting commerce" as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

D. Section 13(b) of the FTC Act authorizes district courts to grant a preliminary injunction "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of success, such action would be in the public interest." 15 U.S.C. § 53(b).

E. Good cause exists to believe that Defendants **Hispanic Global Way, Corp; Hispanic Global Way, LLC; Hispanic Global Way Venez Corp, also d/b/a TVO; Hispanic Global Way Venez I Corp; Gold Lead USA Corp.; Sky Advance, LLC; Sky Advance Choices Corp; Grand Team Service Corparation; First Airborne Service Trading Corp, also d/b/a Fast Solutions, L'Nature Lab, Movil English F.A.S.T., and Molding Motion 5 First Airborne; Hispanic Network Connections, LLC, also d/b/a Lo Vi En TV; Fast Solutions Plus Corp; Maria Elizabeth Vera; Rafael Martin Hernandez; Roberto Carrasco Macedo;** and **Maria Gisella Carrasco** have engaged in, and are likely to engage in, acts or practices that violate Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and that the FTC is likely to prevail on the merits of this action.

F. Good cause exists to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Sections 5(a) and 12 of the FTC Act unless Defendants are restrained and enjoined by Order of this Court.

G. Section 13(b) of the FTC Act authorizes district courts to issue a Preliminary Injunction where the Commission "showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest." 15 U.S.C. § 53(b). In actions brought under Section 13(b), a two-prong analysis applies in determining whether to grant a Preliminary Inunction: (1) the likelihood that the FTC will

ultimately succeed on the merits; and (2) a balancing of the equities. *FTC v. IAB Mktg Associates*, LP, 746 F.3d 1228, 1232 (11th Cir. 2014); *FTC v. U.S. Mtg. Funding, Inc.*, 2011 WL 810790, at *2 (S.D. Fla. Mar. 1, 2011). In FTC law enforcement actions, irreparable injury is presumed, *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1218 (11th Cir. 1991), and the public interest receives greater weight than any private interests. *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988); *FTC v. USA Bevs., Inc.*, 2005 WL 5654219, at *8 (S.D. Fla. Dec. 6, 2005).

H. There is good cause to believe that the Commission is likely to prevail on the merits on this action. The evidence set forth in the Commission's Memorandum in Support of its Motion for an *Ex Parte* TRO and Preliminary Injunction, the declarations and exhibits thereto, and the supplemental materials submitted by the Commission since the issuance of the TRO and prior to the Court's June 30, 2014 Hearing on the Plaintiff's Motion for Entry of a Preliminary Injunction, demonstrates that Defendants likely engaged in unfair and deceptive practices in violation of Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45 and 52. Defendants violated Section 5 by routinely delivering the wrong products and then refusing to provide refunds or exchanges unless consumers agreed to pay additional fees. Defendants violated Sections 5 and 12 by making false and unsubstantiated weight-loss claims about a product, Moulding Motion 5, that completely fails to provide any of the promised benefits.

I. An unfair act or practice under Section 5 is one which "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n); *see also FTC v. Neovi Inc.*, 604 F.3d 1150, 1155 (9th Cir. 2010); *FTC v. Accusearch, Inc.*, 570

F.3d 1187, 1193 (10th Cir. 2009); *FTC v. Direct Benefits Group LLC*, 2013 WL 3771322, at *13 (M.D. Fla. Jul. 18, 2013); FTC Policy Statement on Unfairness (Dec. 17, 1980) ("FTC Unfairness Statement"), appended to *In re Int'l Harvester Co.*, 104 F.T.C. 949, 1984 WL 565290, at *95 (1984).

J. The record demonstrates that Defendants likely engaged in unfair practices. There is substantial evidence that Defendants routinely delivered incorrect or inadequate products to consumers and then refused to provide refunds or exchanges unless consumers first agreed to pay additional fees to Defendants. *First*, the record contains evidence that the Defendants' actions likely have caused substantial injury to consumers. Some consumers were left with unwanted goods and out the full purchase price when – after being sent incorrect, incomplete or defective merchandise – they could not get through to Defendants' customer service representatives. Defendants told others who received unwanted goods that they could make an exchange or obtain a (effectively partial) refund only if they first paid additional fees, ranging from $20 to $299. The Defendants' acts and practices demonstrates the likelihood of substantial consumer injury. Additionally, small individual injuries are substantial for the purposes of the FTC Act where a defendant inflicts a small harm to a large number of people. *Neovi*, 604 F. 3d at 1157; *Direct Benefits Group*, 2013 WL 3771322 at *13; *FTC v. Commerce Plant, Inc.*, 878 F. Supp. 2d 1048, 1078 (C.D. Cal. 2012); FTC Unfairness Statement, 1984 WL 565290 at *101 n.12. *Second*, the harm was not avoidable by consumers. The record suggests that consumers did not reasonably expect that Defendants would take their money, ship the wrong goods, and fail to remedy that mistake without the payment of additional funds. By the time consumers learned of Defendants' post-sale practices, it was too late to avoid injury –

Defendants already had the consumers' money from the purchase price payment. *See Neovi*, 604 F.3d at 1158; *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988); *FTC v. Windward Mktg Ltd.*, 1997 WL 33642380, at *10-11 (N.D. Ga. Sep. 30, 1997). This is especially true here, since the record contains evidence that Defendants routinely failed to disclose their unusual and unexpected post-sale practices. *Int'l Harvester*, 1984 WL 565290, at *87. *Third*, there were no countervailing benefits from Defendants' practices. The record suggests that Defendants' unfair post-sale practices – which left consumers with unwanted goods and out money – is a clearly adverse consequence that provides no countervailing benefit. *Commerce Planet*, 878 F. Supp. 2d at 1078; *FTC v. J.K. Publ'n Inc.*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000); *Windward Mktg.*, 1997 WL 33642380, at *11. Any increased revenue Defendants gained from their unfair post-sale practices is not a positive countervailing benefit. *Orkin*, 849 F.2d at 1358, 1365.

K. A deceptive act or practice under Section 5 is one which involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances, to their detriment. *FTC v. Peoples Credit First, LLC*, 244 Fed. App'x 942, 944 (11th Cir. 2011), citing *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).

L. The record demonstrates that Defendants likely engaged in deceptive practices.

1. There is substantial evidence that, when asked about their refund and exchange policies, Defendants outright lied to consumers – their telemarketers expressly stated that Defendants would provide a full refund to dissatisified consumers, even after they used a product. Express claims generally are presumed to be material. *FTC v. 1st Guar. Mortg. Corp.*, 2011 WL 1233207, at *12 (S.D. Fla Mar. 30, 2011); *FTC v. RCA*

*Credit Svcs*., 727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010) (*citing FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1267 (S.D. Fla. 2007)); *USA Bevs.*, 2005 WL 5654219, at *6. Express claims about refund policies – because they are important to a consumer's purchasing decision – are presumed to be both material and deceptive. *FTC v. U.S. Mortg. Funding, Inc.*, 2011 WL 810790 at *5 (S.D. Fla. Mar. 1, 2011).

2. Defendants also make deceptive weight-loss claims – both express and implied – about their Moulding Motion 5 product. The record contains substantial evidence that Defendants' television advertisments and telemarketers made express claims that the Moulding Motion 5 causes rapid and substantial weight loss. These claims are material since weight loss is a health-related issue. *FTC v. Bronson Ptnrs., LLC*, 564 F. Supp. 2d 119, 135 (D. Conn. 2008); *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1190 (N.D. Ga. 2008); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 960 (N.D. Ill. 2006). There is also substantial evidence in the record that Defendants made strongly implied weight loss claims that: (a) Moulding Motion 5 will cause substantial weight loss without regard to a user's diet or exercise habits; and (b) the results claimed in their television advertisements from purportedly satisfied customers are typical results. Some small, inconspicuous, and difficult to read disclaimers do not change the likely net impression that a reasonable consumer would take away from the Defendants' express and implied claims. *In re: Thompson Medical Co*., 104 F.T.C. 648, 842-43 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987).

3. The declaration submitted by the Commission of Dr. David Levitsky demonstrates it is likely that Defendants' weight-loss claims, however made and stated,

are false and unable to be substantiated. Based on his experience and research, Dr. Levitsky explains that there is no biophysical mechanism that would allow a device like the Moulding Motion 5, that applies heat to human skin, to cause any biologically significant weight loss, much less rapid and substantial weight loss. It seems likely, therefore, that Defendants utterly lack any "competent and reliable scientific evidence" to support their various weight loss claims. *Nat'l Urological*, 645 F. Supp. 2d at 1190, (*citing QT*, 448 F. Supp. 2d at 961).

M. Good cause exists to believe that irreparable damage to the Court's ability to grant effective final relief for consumers (including monetary restitution, rescission, disgorgement, or refunds) will occur from the sale, transfer, destruction, or other disposition or concealment by Defendants of their assets, documents or records unless Defendants are restrained and enjoined by Order of this Court. The balance of the equities favors granting the Commission's request for a Preliminary Injunction because of Defendants' injurious conduct, as well the potential for the Defendants to dissipate consumer assets without a preliminary injunction and other equitable relief. *IAB Mktg*, 746 F.3d at 1232; *U.S. Mtg. Funding, Inc.*, 2011 WL 810790, at *2. The public interest in the entry of a Preliminary Injunction in this case is compelling – halting Defendants' unlawful and injurious conduct, preserving documents and records, and preserving and repatriating assets that may be used to compensate Defendants' numerous victims. *World Wide Factors*, 882 F.2d at 347; *World Travel Vacation Brokers*, 861 F.2d at 1029; *USA Bevs.*, 2005 WL 5654219, at *5. In contrast, Defendants have no legitimate interest in continuing to engage in unlawful acts and practices. *See World Wide Factors*, 882 F.2d at 347 ("no oppressive

hardship to defendants in requiring them to comply with the FTC Act, refrain from fraudulent representation or preserve their assets from dissipation or concealment").

N. No security is required of any agency of the United States for issuance of a preliminary injunction order. Fed. R. Civ. P. 65(c).

## II.

## DEFINITIONS

For purposes of this Preliminary Injunction, the following definitions shall apply:

A. **"Asset"** or **"Assets"** means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property, including chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Defendant or Receivership Entity, including such reserve funds held by payment processors, credit card processors, banks, or other financial institutions.

B. **"Consumer"** any individual or entity that purchased, purchases, or will purchase a good or service, or purported good or service, from Defendants.

C. **"Corporate Defendants"** means **Hispanic Global Way, Corp; Hispanic Global Way, LLC; Hispanic Global Way Venez Corp, also d/b/a TVO; Hispanic Global Way Venez I Corp; Gold Lead USA Corparation; Sky Advance, LLC; Sky Advance Choices Corp; Grand Team Service Corp.; First Airborne Service Trading Corp, also d/b/a**

**Fast Solutions, L'Nature Lab, Movil English F.A.S.T., and Molding Motion 5 First Airborne; Hispanic Network Connections, LLC, also d/b/a Lo Vi En TV; and Fast Solutions Plus Corp**, as well as any affiliates, subsidiaries, successors, or assigns, and any fictitious business entities or business names created or used by these entities, or any of them.

D. **"Defendants"** means the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

E. **"Document"** or **"Documents"** means any materials listed in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, digital records, and other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form through detection devices. A draft or nonidentical copy is a separate document within the meaning of the term.

F. **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, payment processor, independent sales organization, insurance company, or precious metal dealer.

G. **"Foreign Asset"** means any asset located in any country other than the United States including, but not limited to, Peru.

H. **"Individual Defendants"** means **Maria Elizabeth Vera, Rafael Martin Hernandez, Roberto Carrasco Macedo,** and **Maria Gisella Carrasco.**

I. **"Plaintiff"** or **"Commission"** or **"FTC"** means the Federal Trade Commission.

J. **"Receiver"** means the receiver appointed in Section XIV of this Order and any deputy receivers that shall be named by the receiver.

K. **"Receivership Entities"** means the Defendants and all entities that are a part of the Defendants' common enterprise, including, but not limited to, American Business Corp.

**III.**

**PROHIBITIONS**

**IT IS HEREBY ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the telemarketing, advertising, promotion, distribution, offering for sale, or sale of any good or service, are hereby preliminarily restrained and enjoined from:

A. Failing to provide refunds or exchanges, without the charge of any additional fee, when consumers receive from Defendants an incorrect product, a non-working product, an incomplete order, the wrong product size or color, or do not receive the gift that Defendants promised as an inducement for the purchase;

B. Misrepresenting, directly or indirectly, expressly or by implication, that consumers who purchase a product from Defendants can return the product, even after use, and receive a full refund without any additional expense, including shipping, handling, or other costs; and

C. Misrepresenting, directly or indirectly, expressly or by implication, that:

1. Moulding Motion 5, or any other product or device, causes rapid and substantial weight loss;

2. Moulding Motion 5, or any other product or device, causes rapid and substantial weight loss regardless of the user's diet or exercise habits; and

3. Consumers are likely to obtain the weight loss results reported by Defendants' testimonialists.

**IV.**

**ASSET FREEZE**

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, attorneys, Receivership Entities, and all other persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of, any funds, real or personal property, accounts, contracts, shares of stock, lists of consumer names, or other assets, or any interest therein, wherever located, including outside the territorial United States, that are:

1. Owned, controlled, or held by, in whole or in part, for the benefit of, or subject to access by, or belonging to, any Defendant or Receivership Entity;

2. In the actual or constructive possession of any Defendant or Receivership Entity; or

3. In the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or any other entity directly or indirectly owned, managed, or controlled by, or under common control with, any Defendant or Receivership Entity, including, but not limited to, any assets held by or for any Defendant or Receivership Entity at any bank, savings and loan institution, credit union, credit card processing agent, automated clearing house processor, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, mail holding or forwarding company, retirement fund custodian, money market or mutual fund, storage company, trustee, broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or any other financial institution or other third party, either within or outside the territorial United States.

B. Opening, causing to be opened, or otherwise accessing any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or Receivership Entity, or subject to access by any Defendant or Receivership Entity under any Defendant's or Receivership Entity's control, without providing the Commission prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Section;

C. Cashing any checks or depositing any payments from customers or clients of a Defendant; or

D. Incurring liens or encumbrances on real property, personal property, or other assets in the name, singly or jointly, of any Defendant or Receivership Entity or any corporation,

partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or Receivership Entity.

E. The Assets affected by this Section shall include:

1. All Assets of the Defendants and Receivership Entities existing as of June 2, 2014, the date of the entry of this Court's Temporary Restraining Order;

2. For Assets obtained after the entry of this Court's June 2, 2014 Temporary Restraining Order, those Assets of Defendants and Receivership Entities that are derived, directly or indirectly, from the Defendants' illegal activities as described in the Commission's Complaint or activities that are the subject of, or are prohibited by, this Court's Temporary Restraining Order.

F. This Section does not prohibit transfers to the Receiver, as specifically required in the provision of this Order on the Delivery of Receivership Property (Section XVI), nor does it prohibit the repatriation of Foreign Assets, as specifically required in the provision of this Order on Repatriation of Foreign Assets and Documents (Section IX).

**V.**

**DISTRIBUTION OF ORDER BY DEFENDANTS**

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, agent, attorney, and representative of Defendants, and shall, within forty-eight (48) hours following service of this Order, provide the Commission with a sworn statement of compliance with this provision of the Order. The statement shall include the names and addresses of each such person or entity who received a copy of the Order.

## VI.

## SERVICE UPON FINANCIAL INSTITUTIONS AND OTHER NON-PARTIES

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile, U.S. first class mail, private courier, overnight delivery, email, other electronic means, or personally, by agents or employees of the Commission, by any law enforcement agency, or by private process server, upon any financial institution, other entity, or person that may have possession, custody, or control of any account, other asset, or document identified in Section IV above, or that may be otherwise subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution. For purposes of service upon anyone in possession of documents or assets subject to this Order, actual notice of this Order shall be deemed to have been provided upon service of pages 1 through 36 of this Order, exclusive of any Attachments.

## VII.

## DUTIES OF FINANCIAL INSTITUTIONS AND OTHER NON-PARTIES

**IT IS FURTHER ORDERED** that any financial institution, business entity, or other person maintaining or having custody or control of any account, other asset, or documents of any Defendant or Receivership Entity, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with, any Defendant or Receivership Entity, which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A. Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation,

conversion, sale, liquidation, destruction, or other disposal of any of the assets, funds, documents, or other property held by, or under its control:

1. On behalf of, or for the benefit of, any Defendant, Receivership Entity, or any other party subject to Section IV, "Asset Freeze," above;

2. In any account maintained in the name of, or for the benefit of, or subject to withdrawal by, any Defendant, Receivership Entity, or other party subject to Section IV, "Asset Freeze," above; or

3. That are subject to access or use by, or under the signatory power of, any Defendant, Receivership Entity, or other party subject to Section IV, "Asset Freeze," above.

B. Deny Defendants and Receivership Entities, unless accompanied by a representative of the Commission, access to any safe deposit boxes or storage facilities that are either:

1. Titled in the name, individually or jointly, of any Defendant, Receivership Entity, or other party subject to Section IV, "Asset Freeze," above; or

2. Otherwise subject to access by any Defendant, Receivership Entity, or other party subject to Section IV, "Asset Freeze," above.

C. Provide the Commission, to the extent not already done so pursuant to the June 2, 2014 Temporary Restraining Order, within three (3) days of the date of service of this Order, a sworn statement setting forth:

1. The identification number of each account or other asset titled in the name, individually or jointly, of any Defendant or Receivership Entity, or held on behalf

of, or for the benefit of, any Defendant, Receivership Entity, or other party subject to Section IV, "Asset Freeze," above, including all trust accounts managed on behalf of any Defendant or Receivership Entity or subject to any Defendant's or Receivership Entity's control;

2. The balance of each such account, or a description of the nature and value of such asset as of the time this Order is served;

3. The identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant or Receivership Entity, or is otherwise subject to access or control by any Defendant, Receivership Entity, or other party subject to Section IV, "Asset Freeze," above, whether in whole or in part; and

4. If the account, safe deposit box, storage facility, or other asset has been closed or removed, the date closed or removed and the balance on said date.

D. Allow representatives of the Commission and the Receiver immediate access to inspect and copy, or upon the Commission's request, within forty-eight (48) hours of said request, provide the Commission with copies of, all records or other documents pertaining to each such account or other asset, including, but not limited to, originals or copies of account applications, account statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

## VIII.

## FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that, to the extent not already done so pursuant to the June 2, 2014 Temporary Restraining Order, within forty-eight (48) hours following service of this Order:

A. Each Individual Defendant shall prepare and deliver to counsel for the Commission a completed financial statement on the form captioned "Financial Statement of Individual Defendant," which is attached to this Order as **Attachment A**;

B. Each Corporate Defendant shall also prepare and deliver to counsel for the Commission a completed "Financial Statement of Corporate Defendant," which is attached to this Order as **Attachment B**;

C. For each business entity owned, controlled, or managed, whether directly or indirectly, by any Defendant, regardless of whether it is a defendant in this case, that business entity shall also prepare and deliver to counsel for the Commission a completed "Financial Statement of Corporate Defendant," which is attached to this Order as **Attachment B**; and

D. Each Defendant and Receivership Entity shall also prepare and deliver to counsel for the Commission, to the extent not already done so pursuant to the June 2, 2014 Temporary Restraining Order:

1. A completed statement, verified under oath:

a. Specifying the name and address of each financial institution at which the Defendant or Receivership Entity has accounts or safe deposit boxes. Said statements shall include assets held within the United States as well as assets

located outside the territorial jurisdiction of the United States, including but not limited to Peru; and

b. Listing all persons and entities who have received payments, transfers, or assignment of funds, property, or other assets totaling $1,000 or more in any twelve-month period since January 1, 2009. This list shall specify: (a) the amount(s) transferred or assigned; (b) the name and address of each transferee or assignee; (c) the method of transfer (wire transfer, check, cash, other); (d) to the extent the transfer was to a financial institution, the name and address of the institution; (e) the date of the assignment or transfer; and (f) the type and amount of consideration, if any, paid to the Defendant; and

2. For each service, product, or program advertised, marketed, promoted, offered for sale, or sold by Defendants, a detailed accounting, verified under oath, of:

a. The total amount of sales for each such service, product, or program (broken down by month and year) from January 1, 2009, through the date of the issuance of this Order;

b. The gross revenues obtained from the sale of each such service, product, or program (broken down by month and year) from January 1, 2009, through the date of the issuance of this Order;

c. All net profits obtained from the sale of each such service, product, or program (broken down by month and year) from January 1, 2009, through the date of the issuance of this Order; and

d. The full names, addresses, emails, and telephone numbers of all purchasers or recipients of each such service, product, or program, and the amount paid by each from January 1, 2009, through the date of the issuance of this Order.

## IX.

## REPATRIATION OF ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED**, to the extent not already done so pursuant to the June 2, 2014 Temporary Restraining Order, that Defendants and Receivership Entities shall:

A. Within forty-eight (48) hours following service of this Order, take such steps as are necessary, including providing full cooperation with the Receiver, to repatriate to the territory of the United States all documents and assets that are located in a country other than the United States (including, but not limited to, Peru) and are held by or for Defendants or Receivership Entities or are under Defendants' or Receivership Entities' direct or indirect control, jointly, severally, or individually;

B. Within forty-eight (48) hours following service of this Order, provide the Commission and the Receiver with a full accounting of all documents and assets that are located outside of the territory of the United States (including but not limited to Peru) that have been transferred to the territory of the United States pursuant to Subsection A above and are held by or for any Defendant or Receivership Entity or are under any Defendant's or Receivership Entity's direct or indirect control, jointly, severally, or individually, including the addresses and names of any foreign or domestic financial institution or other entity holding the documents and assets, along with the account numbers and balances;

C. Hold and retain all such documents and assets and prevent any transfer, disposition, or dissipation whatsoever of any such documents or assets; and

D. Within forty-eight (48) hours following service of this Order, provide the Commission access to Defendants' and Receivership Entities' records and documents held by financial institutions or other persons outside the territorial United States, by signing and delivering to the Commission's counsel the Consent to Release of Financial Records attached to this Order as **Attachment C**.

## X.

## NON-INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, attorneys, Receivership Entities, and all other persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may hinder the repatriation required by Section IX of this Order, including:

A. Transferring any funds held in a foreign account to an account or recipient other than one designated by the Commission or the Receiver;

B. Dissipating the foreign assets or hindering the repatriation of foreign assets in any way;

C. Sending any statement, letter, fax, email, or wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust

agreement until such time that all assets have been fully repatriated pursuant to Section of this Order; and

D. Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' and Receivership Entities' assets have been fully repatriated pursuant to Section IX of this Order.

**XI.**

**SURRENDER OF INDIVIDUAL DEFENDANTS' PASSPORTS TO THIS COURT**

**IT IS FURTHER ORDERED**, to the extent not already done so pursuant to the June 2, 2014 Temporary Restraining Order, that within forty-eight (48) hours of service of this Order on each Individual Defendant, all passports issued to Individual Defendants (whether issued by the United States Department of State or any other country or state) shall be surrendered to the Clerk of this Court. The passports shall be retained by the Clerk until such time as each of the Individual Defendants certify, under oath, as part of a motion to release passports, that they have repatriated all foreign assets, including, but not limited to, assets previously transferred to Peru, and this Court grants such a motion.

**XII.**

**PRESERVATION OF RECORDS**

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, attorneys, Receivership Entities, and all persons or entities directly or indirectly under their control or under common control with them, and all other persons in active concert or participation with them who receive actual notice of this Order, are hereby preliminarily

restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or business or finances of any of the Defendants or Receivership Entities, and to the business practices of entities that are directly or indirectly under control of any of the Defendants or Receivership Entities, or under common control with any of the Defendants. Any third party having such documents in its possession, custody, or control, and which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, is also restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, such documents. This Section specifically applies to all documents displayed on or accessible from any Internet website owned or controlled by Defendants or Receivership Entities.

**XIII.**

**RECORDS MAINTENANCE AND NEW BUSINESS ACTIVITY**

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, Receivership Entities, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Failing to create and maintain books, records, accounts, bank statements, current accountants' reports, general ledgers, general journals, cash receipt ledgers, cash disbursement ledgers and source documents, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately, fairly and completely reflect the incomes,

disbursements, transactions, dispositions, and uses of the Defendants' and Receivership Entities' assets;

B. Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, including electronically-stored materials, that relate in any way to the business practices or business or personal finances of Defendants or Receivership Entities; to the business practices or finances of entities directly or indirectly under the control of Defendants or Receivership Entities; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant or Receivership Entity; or

C. Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing the Commission and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XIV.

## APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Jonathan E. Perlman, Esq., is appointed Receiver for the Corporate Defendants, Receivership Entities, and any of their affiliates, parents, subsidiaries, divisions, or telephone sales or customer service operations, wherever located, with the full power of an equity receiver. The Receiver shall be the agent of this Court, and solely the agent

of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court.

**XV.**

**RECEIVER'S DUTIES AND AUTHORITIES**

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to accomplish the following:

A. Assume full control of Corporate Defendants and Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, manager, member, independent contractor, employee, or agent of any of the Corporate Defendants and Receivership Entities, including any Defendant, from control of, management of, or participation in, the affairs of Corporate Defendants and Receivership Entities;

B. Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the direct or indirect control of, Corporate Defendants and Receivership Entities, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all Assets and Documents of Corporate Defendants, Receivership Entities, and other Persons or entities whose interests are now under the direction, possession, custody, or direct or indirect control of Corporate Defendants and Receivership Entities. The Receiver shall assume control over Corporate Defendants' and Receivership Entities' income and profits and all sums of money now or hereafter due or owing to Corporate Defendants or Receivership Entities. Provided, however, that the Receiver shall not attempt to collect any amount from a Consumer if the Receiver

believes the Consumer was a victim of the unfair or deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

C. Take all steps necessary to secure and take exclusive custody of each location from which Corporate Defendants operate their businesses. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all Assets of Corporate Defendants; (3) obtaining pertinent information from all employees and other agents of Corporate Defendants, including the name, home address, Social Security Number, job description, company history, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and videotaping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; and (6) requiring any Persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such Persons are not removing from the premises Documents or Assets of Defendants. Law enforcement personnel, including police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

D. Conserve, hold, and manage all Assets of Corporate Defendants and Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets in

order to prevent any irreparable loss, damage, or injury to consumers or creditors of Corporate Defendants, including obtaining an accounting of the Assets and preventing the unauthorized transfer, withdrawal, or misapplication of Assets;

E. Enter into and cancel contracts, and purchase insurance as advisable or necessary;

F. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of Consumers and creditors who have transacted business with Corporate Defendants and Receivership Entities;

G. Manage and administer the business of Corporate Defendants and Receivership Entities until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes, but is not limited to, retaining, hiring, or dismissing any employees, independent contractors, or agents;

H. Prevent the destruction or erasure of any web page or website registered to and operated, in whole or in part, by Corporate Defendants or Receivership Entities;

I. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

J. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by Corporate Defendants or Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of Corporate Defendants and Receivership Entities, such as rental payments;

K. Suspend business operations of Corporate Defendants or Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally or profitably;

L. Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of Corporate Defendants and Receivership Entities, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers;

M. Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against Corporate Defendants and Receivership Entities, as the Receiver deems necessary and advisable to preserve the Assets of Corporate Defendants and Receivership Entities or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

N. Issue subpoenas to obtain Documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

O. Open one or more bank accounts as designated depositories for funds of Corporate Defendants and Receivership Entities. The Receiver shall deposit all funds of Corporate Defendants and Receivership Entities in such a designated account and shall make all payments and disbursements from the receivership estate from such an account. The Receiver shall serve copies of monthly account statements on all parties;

P. Maintain accurate records of all receipts and expenditures incurred as Receiver;

Q. Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

R. File reports with the Court, unless otherwise ordered, every three (3) months regarding:

1. The steps taken by the Receiver to implement the terms of this Order;

2. The value of all of the Corporate Defendants' and Receivership Entities' liquidated and unliquidated Assets;

3. The sum of all of the Corporate Defendants' and Receivership Entities' liabilities;

4. The steps the Receiver intends to take to:

a. Prevent any diminution of the value of the Corporate Defendants' and Receivership Entities' Assets;

b. Pursue receivership Assets from third parties; and

c. Adjust the Corporate Defendants' and Receivership Entities' liabilities, if appropriate, and

5. Any other matters which the Receiver believes should be brought to the attention of the Court.

## XVI.

## TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED,** to the extent not already done so pursuant to the June 2, 2014 Temporary Restraining Order, that Defendants, their representatives, agents, officers, directors, employees, managers, members, and any other persons with possession, custody, or

control of property or records relating to Corporate Defendants and Receivership Entities shall, upon notice of this Order by personal service or otherwise, immediately notify the Receiver of, and, upon receiving a request from the Receiver, immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A. All Assets of Corporate Defendants and Receivership Entities;

B. All Documents of Corporate Defendants and Receivership Entities, including books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title Documents, and other papers;

C. All computers, electronic devices, and machines and data in whatever form used to conduct the business of Corporate Defendants or Receivership Entities;

D. All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of Corporate Defendants or Receivership Entities; and

E. All keys, codes, user names, and passwords necessary to gain or to secure access to any Assets or Documents of Corporate Defendants or Receivership Entities, including access to their business premises, means of communication, accounts, computer systems, or other property.

In the event that any Person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other

equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other item covered by this Section and to deliver it to the Receiver.

## XVII.

## PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants shall provide to the Receiver, immediately upon request, the following:

A. A list of all Assets and property, including accounts, of Corporate Defendants and Receivership Entities that are held in any name other than the name of a Corporate Defendant, or by any person or entity other than a Corporate Defendant; and

B. A list of all agents, employees, officers, directors, managers, members, employees, agents, or those persons and entities in active concert and participation with Defendants, who have been associated or done business with Corporate Defendants or Receivership Entities.

## XVIII.

## COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, their representatives, agents, employees, officers, directors, managers, members, Receivership Entities, and any other person served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of Corporate Defendants or Receivership Entities. This cooperation and assistance shall include, but not be limited to: (A)

providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; (B) providing any password required to access any computer, electronic file, or telephonic data in any medium; (C) advising all Persons who owe money to Corporate Defendants or Receivership Entities that all debts should be paid directly to the Receiver; and (D) transferring funds at the Receiver's direction and producing records related to the Assets and sales of Corporate Defendants and Receivership Entities. The entities obligated to cooperate with the Receiver under this provision include, but are not limited to, banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers, credit card processors, payment processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, and other Financial Institutions and depositories of any kind, as well as all common carriers, telecommunications companies, and third-party billing agents.

## XIX.

## PROHIBITION ON INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, Receivership Entities and their representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, employee, agent, affiliate, independent contractor, accountant, financial advisor, or other device, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby preliminarily restrained and enjoined from:

A. Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to this receivership;

B. Transacting any of the business of Corporate Defendants and Receivership Entities;

C. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, Corporate Defendants, Receivership Entities, or the Receiver; and

D. Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

**XX.**

**STAY OF ACTIONS AGAINST RECEIVERSHIP DEFENDANTS**

**IT IS FURTHER ORDERED** that, except by leave of this Court, during pendency of the receivership ordered herein, Defendants, their representatives, corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants or Receivership Entities, and all others acting for or on behalf of such persons, are hereby preliminarily enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of Corporate Defendants and Receivership Entities, including:

A. Petitioning, or assisting in the filing of a petition, that would cause any Corporate Defendant or Receivership Entity to be placed in bankruptcy;

B. Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against Corporate Defendants or a Receivership Entity, including the issuance or

employment of process against Corporate Defendants or Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C. Filing or enforcing any lien on any Asset of Corporate Defendants or Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of Corporate Defendants or Receivership Entities, or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of Corporate Defendants or Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; and

D. Initiating any other process or proceeding that would interfere with the Receiver's efforts to manage or take custody, control, or possession of the Assets or Documents subject to this receivership.

**PROVIDED THAT**, this Order does not stay: (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XXI.

## BANKRUPTCY PETITIONS

**IT IS FURTHER ORDERED** that, in light of the appointment of the Receiver, the Corporate Defendants and Receivership Entities are hereby prohibited from filing petitions for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

## XXII.

## COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, Corporate Defendants or Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXIII.

## RECEIVER'S BOND NOT REQUIRED

**IT IS FURTHER ORDERED** that the Receiver shall not be required to post a bond concerning the performance of the duties of his office and the acts the Court directs.

## XXIV.

## ACKNOWLEDGEMENT OF RECEIPT OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that each Defendant, within three (3) business days of service of this Order, shall submit to counsel for the FTC a sworn statement acknowledging receipt of this Order.

**XXV.**

**CORRESPONDENCE WITH AND NOTICE TO THE COMMISSION**

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on the Commission shall be sent either via electronic transmission or via FedEx to:

Michelle L. Schaefer
Laura D. Koss
John Andrew Singer
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-3515 (Schaefer)
(202) 326-2890 (Koss)
(202) 326-3234 (Singer)
(202) 326-2558 [facsimile]
mschaefer@ftc.gov
lkoss@ftc.gov
jsinger@ftc.gov

**XXVI.**

**EXPIRATION DATE OF PRELIMINARY INJUNCTION**

**IT IS FURTHER ORDERED** that this Preliminary Injunction Order shall remain in force and effect until further Order of the Court.

**XXVII.**

**CREDIT REPORTS FROM CONSUMER REPORTING AGENCIES**

**IT IS FURTHER ORDERED** that, pursuant to Section 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, any consumer reporting agency which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall, upon request of the

Commission or its counsel, provide to the Commission or its counsel a consumer or credit report concerning any Defendant or Receivership Entity.

## XXVIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of July, 2014.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record